UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JENNIFER DIANE WILLIAMS,

    Plaintiff,

v.                                                  CASE NO. 3:16-cv-1146-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff claims that she became disabled on February 2, 2010. (Tr. 17, 155-60.) The application was denied initially and on reconsideration. (Tr. 17, 84-124.) A hearing was held in front of an administrative law judge ("ALJ") on August 18, 2014. (Tr. 44-83.) The ALJ rendered a decision on February 25, 2015, finding Plaintiff not disabled from February 2, 2010, the alleged onset date, through the date of the decision.[2]

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 12, 14.)

[2] Plaintiff had to establish disability on or before December 31, 2015, her date last insured, in order to be entitled to a period of disability and DIB.

Plaintiff is appealing the Commissioner's decision that she was not disabled from February 2, 2010 through February 25, 2015. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED AND REMANDED**.

I.  **Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff argues three general points on appeal. First, Plaintiff argues that the ALJ improperly evaluated the opinions of her treating physician, Judella Haddad, M.D., consultative examining doctor Richard Nay, Ph.D, her former employer, Lynn Martin, Esq., and her husband, Richard Williams. Plaintiff contends that the ALJ failed to articulate good cause supported by substantial evidence for discounting their opinions. Second, Plaintiff argues that the ALJ erred in evaluating Plaintiff's migraine headaches. Third, Plaintiff argues that the ALJ improperly evaluated her credibility by failing to take into consideration her strong work history. The Commissioner argues that the ALJ's evaluation of the opinions of record is clearly articulated and supported by substantial evidence, that the ALJ properly considered Plaintiff's migraines, and that the ALJ fairly evaluated Plaintiff's credibility. The undersigned agrees with Plaintiff with respect to her first contention and thus determines that remand is warranted without addressing the second and third issues raised on appeal.

### A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight

4

than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

Evidence from other sources, *e.g.*, not acceptable medical sources such as nurse-practitioners, may be used to show the severity of a claimant's impairments and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(d); SSR 06-03p. "Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p.

> The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors . . . . However, depending on the particular facts in a case, and after applying the factors for

weighing opinion evidence, an opinion from a medical source who is
not an "acceptable medical source" may outweigh the opinion of an
"acceptable medical source," including the medical opinion of a
treating source.

*Id.*; *see also Duncan v. Astrue*, No. 3:07-cv-751-J-HTS, 2008 WL 1925091, at *2 (M.D. Fla. Apr. 29, 2008) (citing SSR 06-03p); *Sloan v. Astrue*, 499 F.3d 883, 888-89 (8th Cir. 2007) (same).

### B. The ALJ's Decision

The ALJ found that Plaintiff had severe impairments, including type II diabetes mellitus with peripheral neuropathy, history of transient cerebral ischemia, left ankle degenerative joint disease/osteoarthritis status post surgery, hypertension, history of migraines, history of mild valve prolapse, history of an enlarged heart, generalized anxiety disorder, panic disorder with agoraphobia, cognitive disorder, and major depressive disorder. (Tr. 19.) The ALJ then found that Plaintiff did not have any impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20.) At step four[3], the ALJ found, in relevant part, that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except no climbing on ladders, ropes, and scaffolds; no more than

---

[3] A five-step sequential evaluation process has been established by the Social Security Administration in the Social Security Act, which is used to determine whether an individual is disabled or not (20 C.F.R. § 404.1520(a)).

> occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no more than frequent handling (gross manipulation) and fingering (fine manipulation) with the left upper extremity; and work is limited to simple, routine, and repetitive tasks performed in an environment free of fast paced production requirements involving only simple work-related decisions and routine work place changes with only occasional interaction with the public.

(Tr. 26.) The ALJ then determined that while Plaintiff was unable to perform her past relevant work, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 37-38.) As such, the ALJ found that Plaintiff was not disabled during the relevant period. (Tr. 39.)

### C. Analysis

Plaintiff initially argues that the ALJ erred by improperly discounting the opinions of Drs. Haddad and Nay, Plaintiff's former employer, Lynn Martin, and Plaintiff's husband, Richard Williams. Specifically, Plaintiff contends that the ALJ failed to articulate good cause for discounting the opinions because she considered the opinions in isolation without discussing the consistency of the opinions. The undersigned agrees.

On March 8, 2013, Plaintiff submitted a Physical Residual Functional Capacity Questionnaire completed by Dr. Haddad, Plaintiff's treating physician, diagnosing Plaintiff with, *inter alia*, anxiety. (Tr. 322.) Dr. Haddad listed Plaintiff's symptoms as "anxiety with poor concentration," and opined that such symptoms

7

would frequently interfere with her attention and concentration. (*Id.*) She further opined that Plaintiff would experience "good days" and "bad days," and that while she could not determine how many days per month Plaintiff would likely be absent from work due to her impairments, she was "not able to handle stress well when dealing or communicating with other people." (Tr. 324.)

On September 30, 2013, Dr. Nay evaluated Plaintiff. (Tr. 405-11.) Dr. Nay's evaluation consisted of a clinical interview, behavioral observations of Plaintiff, review of a November 13, 2012 psychological evaluation performed by examining psychologist Allison Keiter, Psy.D., review of a March 22, 2012 physical examination conducted by Erin Doty, M.D., and a series of psychological tests (the Repeatable Battery for the Assessment of Neuropsychological Status, the Wechsler Adult Intelligence Scale, the Mini Mental Status Examination and the Dot Counting Test) administered to Plaintiff. Dr. Nay reported that the scores on such tests revealed significant deficits in short-term memory and attention and concentration. (Tr. 408-09.) Dr. Nay concluded that Plaintiff's significant memory and attention and concentration deficits precluded her ability to be gainfully employed. (Tr. 409-10.) Dr. Nay further concluded that Plaintiff has a poor stress coping response and would not adapt well to any change in the job setting. (Tr. 410.)

On October 22, 2013, Dr. Nay completed a Mental Residual Functional

Capacity Questionnaire based on his September 30, 2013 evaluation. (Tr. 412-15.) Dr. Nay opined that Plaintiff would be unable to maintain regular attendance and be punctual within customary tolerances, complete a normal workday and workweek without interruption from her psychologically based symptoms, respond appropriately to changes in a routine work setting, deal with normal work stress, understand and remember detailed instructions, carry out detailed instructions, and deal with the stress of semiskilled and skilled work on a sustained basis. (Tr. 414.) Dr. Nay also opined that Plaintiff would have noticeable difficulty (as defined by more than 20% of the workday or workweek) remembering work-like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, maintaining attention for a two-hour segment, sustaining an ordinary routine without special supervision, working in coordination with or in proximity to others without being unduly distracted, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, setting realistic goals or making plans independently of others, interacting appropriately with the

general public, traveling to an unfamiliar place, and using public transportation. (*Id.*) Dr. Nay further opined that Plaintiff had "significant impairment in short-term memory/delayed memory, and attention/concentration," and that she could not learn new information without reminders, that she is easily confused, that she loses focus, and that her depression and anxiety are easily exacerbated by stress. (Tr. 415.)

Attorney Lynn Martin, Plaintiff's previous employer, testified at the hearing that Plaintiff was a "great employee," but eventually started forgetting simple work tasks, such as calendaring items and filing documents. (Tr. 72-73.) Attorney Martin also testified that Plaintiff really wanted to work, but just could not perform simple tasks due to her impairments. (*Id.*)

Plaintiff's husband, Richard Williams, completed a third-party function report on October 6, 2012. (Tr. 199-206.) In the report, Mr. Williams stated that Plaintiff was unable to work because she had trouble remembering things. (Tr. 199.) Mr. Williams stated that he has to remind her to perform simple tasks, that she gets easily confused, and that she becomes antisocial when her stress and anxiety levels are increased. (Tr. 201-204.)

The ALJ afforded "limited" weight to the opinions of Dr. Haddad (a treating physician typically afforded controlling weight), Attorney Martin, and Mr. Williams, and "little" weight to the opinions of Dr. Nay. (Tr. 35-26.) The main reason cited by the ALJ for discounting the opinions was because they were inconsistent with

10

some treatment records. (Tr. 35 ("Subsequent records from treating mental health specialists establish moderate to mild symptoms with ongoing treatment, which is inconsistent with Dr. Haddad's opined severity."), 36 ("The undersigned notes that Dr. Nay had the opportunity to evaluate the claimant for a consultative examination; however, his opined severity is inconsistent with other medical opinions and treatment records, even after a copy of his evaluation was apparently presented to treating mental health specialists in August 2014 by the claimant. The claimant's treatment records establish mild to moderate limitations with and without ongoing treatment (see Exhibits 16F and 17F)."), 36 ("The[] opinions [of Attorney Martin and Mr. Williams] are given limited weight as the opined severity is again not consistent with treatment records establishing mild to moderate functioning.").) However, the Court cannot conclude that substantial evidence supports the ALJ's reasoning in this regard, as the ALJ completely ignored the consistency of the opinions rendered by Dr. Haddad, Dr. Nay, Attorney Martin, and Mr. Williams, all opining as to Plaintiff's significant functional impairments due to memory deficits, concentration deficits, and inability to cope with stress.[4] *See, e.g., Meek v. Astrue*, No. 3:08-cv-317-J-HTS, 2008 WL 4328227, at *1 (M.D. Fla. Sept. 17, 2008) ("Although an ALJ need not discuss all

---

[4] Notably, Dr. Keiter, the Agency's examining psychologist who completed a Psychological Evaluation Report on November 13, 2012, also opined that Plaintiff "may struggle at times to maintain attention and concentration," and that Plaintiff "may need assistance [in her ability to manage funds] due to her memory impairment." (Tr. 308-09.)

of the evidence in the record, he may not ignore evidence that does not support his decision . . . Rather, the judge must explain why significant probative evidence has been rejected.") (internal citations and quotation marks omitted); *Lord v. Apfel*, 114 F. Supp. 2d 3, 13 (D.N.H. 2000) (stating that although the Commissioner is not required to refer to every piece of evidence in his decision, the Commissioner may not ignore relevant evidence, particularly when it supports the claimant's position); *see also* 20 CFR § 404.1527(c)(4) ("[W]e consider *all* of the following factors in deciding the weight we give to any medical opinion . . . Generally, the more consistent a medical opinion is with the record *as a whole*, the more weight we will give to that medical opinion.") (emphasis added). Thus, it cannot be said that the ALJ adequately determined whether the opinions were consistent with the record as a whole.

Nevertheless, substantial evidence does not support the ALJ's rejection of the opinions assuming the ALJ considered the consistency of the opinions. With respect to Dr. Haddad's suggested mental limitations, the ALJ reasoned that the record revealed "no evidence that [Plaintiff] was engage[d] in ongoing treatment with a mental health specialist or counseling at the time the opinion was rendered." (Tr. 35.) While this may be true, the ALJ omitted that Plaintiff was consistently treated during the alleged disability period for depression and anxiety at Shands Jacksonville. (Tr. 317-20, 391-94, 422-581.) The record shows that during this period, Plaintiff's medication was switched out and increased in an

12

attempt to control her symptoms, but that she was ultimately referred to mental health counseling. (Tr. 393 (switching Plaintiff to "citalopram for anxiety and depression" on May 14, 2013, because the "venlafexine caused her to be suicidal"), 423 (increasing "Clonazepam to 1 mg TID due to increasing anxiety" on October 16, 2013), 498 (noting that Plaintiff's anxiety and depression was "uncontrolled on Clonazepam .5 mg TID" on October 16, 2013), 451, 456 (noting that on February 12, 2014 Plaintiff reported "having a hard time dealing with her left foot pain/numbness after surgery and is becoming more depressed . . . [R]eferral sent to Ms. Brown," and stating that "this patient is depressed and has anxiety issues, sending consult today").) The ALJ failed to discuss these treatment records although they were made close in time to the opinions rendered by Drs. Haddad and Nay.

The ALJ also vaguely asserted that "[s]ubsequent records from treating mental health specialists," were inconsistent with Dr. Haddad's opinions because they "establish moderate to mild symptoms with ongoing treatment." (Tr. 35.) However, the ALJ referenced only two records in support without further explanation as to how the records establish such mild to moderate limitations of function so as to render them records inconsistent with the record opinions. In fact, a August 22, 2014 progress note referenced by the ALJ as inconsistent with the record opinions states that Plaintiff "continues to demonstrate functional impairment in self-care and social [domains] and without medication management

13

and individual therapy is likely to demonstrate a regression in identified symptoms and functioning." (Tr. 662.)  Interestingly, the ALJ also criticized Dr. Haddad's two-month treatment history with Plaintiff; yet, the ALJ referenced only two months' worth of progress notes as inconsistent with Dr. Haddad's opinions.  (Tr. 35, 648-52, 655-62 (referencing progress notes from June and August 2014).)

With respect to the opinions of Dr. Nay, Attorney Martin, and Mr. Williams, the ALJ again vaguely asserted that the treatment records "establish mild to moderate limitations," or "mild to moderate functioning." (Tr. 36.)  As discussed above, the ALJ failed to explain how the records establish mild to moderate limitations, other than to reference GAF scores ranging from 51-70.  (Tr. 36.)  However, "[r]eliance upon a GAF score is of questionable value in determining an individual's mental functional capacity." *Gasaway v. Astrue*, No.: 8:06-cv-1869-T-TGW, 2008 WL 585113 at *4 (M.D. Fla. Mar. 3, 2008).[5]  It bears noting that Dr. Nay based his opinions upon, *inter alia*, a series of valid tests traditionally administered to assess mental functioning.[6]

---

[5] In fact, the latest edition of the Diagnostic and Statistical Manual of Mental Disorders has abandoned the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).  Indeed, the Social Security Administration cautions that a "GAF score is never dispositive of impairment severity." Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM-13066 (July 22, 2013) REV (Oct. 14, 2014).

[6] The ALJ also cited, without further explanation, the lack of inpatient admissions and a March 22, 2012 diagnosis of mild cognitive disorder as inconsistent with Dr. Nay's
(continued...)

### III. Conclusion

For the forgoing reasons, the Court concludes that the ALJ improperly evaluated the record opinions. Therefore, the Court finds that the ALJ's decision is not supported by substantial evidence. This issue is dispositive and, therefore, it is unnecessary for the Court to address Plaintiff's remaining arguments. *See, e.g., Alexander v. Comm'r of Soc. Sec.*, No. 8:13-cv-1602-T-GJK, 2014 WL 4211311, at *3 n.3 (M.D. Fla. Aug. 26, 2014) (citing *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that on remand the ALJ must reassess the entire record)).

Accordingly, it is hereby **ORDERED**:

1. The decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** to the Commissioner, with instructions for the ALJ to: (a) reevaluate the record opinions and explain what weight is being accorded to those opinions, and the reasons therefor; (b) reconsider the RFC assessment, if necessary, and (c) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment consistent with this Order, and close the file.

---

[6](...continued)
opinions. However, Dr. Nay indicated that he reviewed the March 22, 2012 report and nevertheless concluded that Plaintiff had significant mental impairments. (Tr. 405.) Moreover, in citing the lack of inpatient admissions, without more, the ALJ "substituted h[er] own hunch or intuition for the diagnosis of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992).

3. Plaintiff's counsel is advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No.: 6:12-124-Orl-22 (*In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** in Jacksonville, Florida, on September 19, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record